BROWN, Executrix, Respondent, vs. CHILI STATE BANK, Appellant.

*October 16, 1931—February 9, 1932.*

For the appellant there were briefs by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

For the respondent there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Leo Mann* of counsel, all of Milwaukee, and oral argument by *Mr. Mann.*

The following opinion was filed November 10, 1931:

WICKHEM, J. The plaintiff is the executrix of the will of George G. Brown, deceased. The defendant, Chili State Bank, is a Wisconsin corporation engaged in the business of operating a bank at Chili, Wisconsin. During the years 1927 and 1928 George G. Brown purchased poultry from

one John Stanton. Stanton had a checking account at the defendant bank. On August 18, 1926, Brown wrote to the bank stating that he was doing business with Stanton, and that Stanton was shipping him live poultry in carload lots. He stated that the purpose of his letter was to notify the bank that until further notice he would pay drafts by Stanton against him, with bill of lading attached to each draft for a carload of live poultry up to the amount of $2,500. The letter closes with references. On September 3, 1927, Brown wrote to the bank to the effect that he had an understanding with Stanton that he would pay draft for $2,500 with bill of lading attached, for car of live poultry. He states that this amount was based on a tonnage of 15,000 pounds; that Stanton has had difficulty in securing that tonnage and he has requested him to reduce his draft in proportion whenever his tonnage fails to reach 15,000 pounds.

On September 6, 1927, the cashier of the defendant bank replied as follows:

"Yours 3d inst., *re* John Stanton tonnage. Should Mr. Stanton's car fail to net $2,500 amount you may draw on us for deficit, notify him, and oblige."

On July 21, 1928, Brown wrote to the bank stating that Mr. Stanton was again operating, and repeating his offer to pay drafts on bills of lading in the amount of $2,500, and closing with the statement: "I understand your letter of last season still applies." The cashier of the defendant bank replied under date of July 23, 1928: "Yours 21st inst., yes our letter of Sept. 6th, 1927, *re* John Stanton, still applies."

The practice followed by Brown and Stanton was that Stanton would draw a draft on Brown, payable to the Chili State Bank, and attach to the draft a bill of lading covering the shipment of a carload of poultry. The draft would be delivered to the Chili State Bank, which handled it for collection in the usual way. The bank made no profit out of the transaction.

The draft involved in this case was drawn by Stanton on Brown on November 26, 1928, in the amount of $2,500, payable to the order of the Chili State Bank. The draft was indorsed and forwarded by the Chili State Bank to the Drovers National Bank, Chicago, and was by them credited to the Chili State Bank. The draft was paid by Brown in New York on November 30, 1928.

At the time when Stanton delivered the draft to the bank he had an overdraft of $1,700, and on that day he made a deposit of $3,254.55, which deposit included the draft in question. The deposits in Stanton's account were checked out in the regular course of business.

The loading of the car covered by the bill of lading was never completed, Stanton being unable to fill the car. The car was sold in Chicago for $388. After deducting the expense chargeable for unloading, inspection, cartage, commission, and freight, a net balance of $115.89 remained.

This action was based upon the agreement contained in the letter of September 6th, and the judgment was for the sum of $2,384.11, which represented the amount of the $2,500 draft, less the sum of $115.89 realized on the sale of the poultry in Chicago, together with interest from December 20, 1928.

The first contention of the appellant is that the letter of September 6, 1927, did not constitute an agreement to honor drafts covering deficits. It is pointed out that this is neither an undertaking to pay nor an agreement to honor; that the authorization to Brown to draw upon the bank is not enough upon which to base the inference of a promise to honor; that the letter does not in any way imply, as found by the trial court, that the defendant would pay the deficit or honor the drafts. We think this contention is without merit. The authorization to draw pretty clearly implies a promise to honor; otherwise there would seem to be no point in writing the letter.

The next contention is that, assuming a contract to have resulted from the letter, such contract must be construed to cover merely such minor deficiencies of tonnage as might thereafter occur in cars delivered to New York city, and that it cannot be construed to guarantee substantial performance on the part of Stanton. We have concluded that this contention is sound. At the outset it must be remembered that the principal transaction was between Brown and Stanton. They were engaged in business relations for mutual profit. The relations of the bank to the transaction were initiated by Brown's first letter to the bank, in which he established his credit and responsibility, and offered to accept drafts on Stanton's behalf in order that the bank might furnish to Stanton the cash necessary for the latter to carry on his buying activities for Brown. From the very beginning of this transaction it was Brown who was lending his credit to Stanton so that Stanton might have from the bank the cash resources to fulfil his contract with Brown. The part of the bank in the transaction was to be discharged without remuneration, and it is our conclusion that the bank at no stage intended on its part, or was expected by Brown, to lend its credit to Stanton, or to guarantee the substantial performance of his contract with Brown.

The arrangements having been completed and several cars shipped to New York, the difficulty arose that several of these cars had shown small deficiencies in tonnage. In such cases Brown would wire to the bank asking if they would honor a draft on Stanton for $100 or $200, or whatever the amount might be. This being the situation, Brown wrote his letter of September 3d to the bank, calling attention to the fact that Stanton had had some difficulty in securing the tonnage estimated, and noting that he had requested Stanton to reduce his drafts in proportion whenever his tonnage had failed to reach that required. It was in response to this that the letter of September 6th, agreeing to honor drafts, was

written by the cashier of the bank. It is plain that the letter of September 6th was intended to cover the situation which then actually existed, which was in Brown's mind at the time of the letter of September 3d, and which was described in that letter. Whatever contract may be claimed to have resulted from the letter must, we think, be construed in the light of the circumstances not to cover the case of a failure on the part of Stanton substantially to perform his contract by delivering a carload of poultry to New York. Its scope must be restricted to a promise to respond to drafts for such minor deficiencies as might occur in the shipment as delivered in New York.

This construction of the transaction between these parties makes it unnecessary to consider the further contention that the agreement is void as a promise to answer for the debt, default, or miscarriage of another, the contention that there is no consideration for the alleged contract, and the contention that the contract is *ultra vires* the bank.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

FOWLER and FRITZ, JJ., dissent.

A motion for a rehearing was denied, with $25 costs, on February 9, 1932.